IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 8:06CR231 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| RICHARD L. BAIRD, JR., ) | |
| ) | |
| Defendant. ) | |

This case is before the court on the Motion to Suppress (#31) filed by defendant, Richard Lee Baird, Jr.  The motion was heard on October 18, 2006, November 6, 2006, and November 14, 2006.  The Transcript of the October 18, 2006 hearing (#50) was filed on October 26, 2006; the Transcript (#64) of the November 6, 2006 hearing was filed on November 29, 2006; and the Transcript (#65) of the November 14, 2006 hearing was filed on November 29, 2006, at which time the motion was deemed submitted.

Baird moves the court for the suppression of all evidence and statements obtained as a result of the June 21, 2006 search of a Nissan Altima in which he was a passenger. Specifically, Baird alleges officers conducted a warrantless, nonconsensual search of the vehicle, in violation of the Fourth Amendment to the Constitution of the United States. Consequently, the physical evidence seized and the subsequent statements all flowed from the unlawful search and should be suppressed[1] as fruits of the poisonous tree, under *Wong Sun v. United States*, 371 U.S. 471 (1963).  Additionally, Baird alleges, but failed to brief, a violation of his *Miranda* rights.

---

[1] Defendant's brief (#32, pp. 2-4).

The government counters that Baird does not have standing[2], that the search of the vehicle was based on consent, and that statements made by Baird were either not subject to *Miranda* or were made after *Miranda* warnings were given.

## FACTUAL SUMMARY

Marcus Warnke testified that he is a nine-year veteran of the Nebraska State Patrol, currently serving as a trooper. On June 21, 2006 while on duty, he was on the off-ramp of the Utica interchange of Interstate 80 assisting a motorist when a Nissan Altima with Colorado plates exited the interstate and pulled along side him. The front passenger of the Nissan, later identified as the defendant Richard Lee Baird, Jr., yelled out and asked if the Nissan was required to stop (5:19-6:20). Warnke told Baird that he was not required to stop and watched as the Nissan proceeded north towards Utica (8:13-18). Warnke assumed the reason for the question was because he and other officers were conducting a ruse checkpoint on the Interstate (8:3-4). Warnke described a ruse checkpoint as a law enforcement action where signs are placed on a roadway stating that a checkpoint is located ahead and that a drug dog is in use. In reality, there is no checkpoint or drug dog. Officers then watch for traffic leaving the interstate using an exit where no service, gas, or restrooms are advertised (7:4-16).

Warnke was suspicious of his contact with Baird because the Nissan had exited the interstate at the location of the ruse checkpoint, had out-of-state license plates which did not belong in the rural area, and had stopped so Baird could ask if they were required to stop (8:19-9:13).

---

[2] Government's brief (#36, pp.2-3)

-2-

Warnke ran a records check on the Nissan as he followed the vehicle to Utica.  The records check returned information that the Nissan was tan in color; however, Warnke observed that it was red (9:24-10:11).  While Warnke saw no traffic violations, he continued to observe as the Nissan stopped by gas pumps at the Bronco Spur gas station in Utica.  Warnke stopped his vehicle about 20 yards away from the Nissan, entered the station, and purchased a Pepsi (12:11-13:5).

Warnke testified that while he was inside the station, the driver of the Nissan, later identified as Michael Wright, entered the station.  Warnke said, "Hi," and Wright responded, "Hi."  Shortly, Wright left the station and returned to the Nissan.  Warnke followed and struck up a conversation with Wright in an attempt to get him to consent to a search of the Nissan (13:6-25).  Warnke asked if there was anything illegal in the car.  Wright responded, "No."  Warnke testified he asked for permission to search the vehicle and Wright verbally responded, "Yes." (14:23-15:5).  Warnke searched the vehicle and located a number of guns.  Following the search, Warnke was told, by another trooper who had arrived at the scene, that Wright had informed him the guns were stolen from Wright's father (21:11-21).  Warnke also determined that the car was leased to Wright's father (16:4-16). On cross-examination, Warnke admitted that Baird was authorized on the lease as a driver of the rental car (47:21-24).  While at the stop, Warnke took no statements from the parties (24:9-11).  However, he later transported Baird to the Seward County sheriff's office where he *Mirandized* Baird using a written *Miranda* form (Ex. 1).  Baird initialed and signed the document (26:8-17).

Warnke prepared an affidavit of probable cause[3] regarding this incident for submission to the state district court. On cross-examination Warnke admitted that in his affidavit (Ex. 101), he stated that he "asked if they had anything illegal in the vehicle and asked them to park the vehicle so he could search it." (45:2-18). He also admitted that during the search he asked questions about the weapons and whether or not they were stolen (45:21-46:5).

Kurt Von Minden testified he is an 8½ year employee of the Nebraska State Patrol currently serving as a sergeant. On June 21, 2006 he made contact with Trooper Warnke and the defendants at a gas station in Utica. While he was not present during the initial conversation, he was present when Baird stated that there was a gun in the back of the car

---

[3] The affidavit (Ex. 101) contains the following statement of facts:

On 06/21/06, at approximately 1320 Trooper Warnke observed [a] Colorado plated vehicle stop at the Utica off ramp and an occupant – Richard Baird Jr. asked Warnke if they were required to pull over. Warnke was out with [a] vehicle that had engine problems at the time. Warnke told him "no" and the vehicle proceeded north on the Utica spur. Warnke finished with the motorist assist and followed the Colorado vehicle to the Bronco Spur gas station at Utica. Warnke contacted the driver of the vehicle, Michael Wright, and Richard Baird Jr. who advised him they were going to Chicago and asked how to get back to the Interstate. Warnke gave them directions and Brittany Scholes who was in the gas station got in the vehicle. They were starting to leave and Warnke asked if they had anything illegal in the vehicle and asked them to park the vehicle so he could search it. Wright complied and the vehicle was searched by Warnke. Warnke located 2 rifles and 3 handguns (all loaded) in the trunk of the vehicle. Trooper Von Minden located 1 handgun in the vehicle and a bag with Richard Lee Baird Jr.'s license in with it. Warnke ran all subjects and Brittany Scholes came back with a warrant and Baird Jr. also came back with a non-extraditable warrant. Warnke discovered that the guns had been stolen from Gary Wright (the father of Michael Wright) through an interview that Trooper Kurt Von Minden 420 had done on Michael Wright. Both Michael Wright and Richard Baird Jr. were discovered to be convicted felons. Michael B. Wright was cited and placed into custody for felon in possession of a firearm, possession of stolen property and a warrant. Richard Baird Jr. was cited and placed into custody for possession of stolen property, felon in possession of a firearm and carrying a concealed weapon. Brittany Paige Scholes was cited and placed into custody for possession of stolen property and a warrant.

and that Baird's statement was made before the gun was found, and was not in response to any questions (54:2-21).

Ronald E. Meadows testified that he is a agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. On June 21, 2006 he took a statement from Richard L. Baird. Prior to taking the statement he informed Baird of his rights using a rights advisory waiver form (Ex. 2) (56:3-8). Meadows noted that he took the statement after being contacted by Trooper Warnke and advised of Warnke's contact with individuals in possession of stolen firearms. Meadows was advised that one of the individuals, Baird, wanted to speak with a federal agent about information he had of other crimes (56:22-57:11).

Richard L. Baird, Jr. testified that he was present when Trooper Warnke approached the Nissan and clearly heard the conversation (60:14-25). He heard Trooper Warnke ask where they were going and he responded, "Chicago and Michigan." He heard Warnke ask if there were any guns or drugs in the car and he said, "No." He heard Trooper Warnke tell them to pull over and point in the direction where "his cop car" was parked (61:1-7).

Baird testified that neither he nor Wright were asked for permission to search the Nissan, but rather were instructed to pull the car over and pointed in the direction of the trooper's vehicle (61:8-16).

On November 6, 2006[4] Michael Brian Wright was sworn, but refused to testify. The hearing was continued to allow Wright to speak with his attorney.

---

[4] Wright's appearance on this date is contained in the Transcript of Proceedings (#64).

On November 14, 2006[5] Michael Wright testified, with his attorney present, that he had recently pled guilty to one count of felon in possession of a firearm and had received a 40-month sentence (T65, 5:16-24).

Wright testified that on June 21, 2006 he was arrested in Nebraska along with Rick Baird and Brittany Scholes (T65, 6:9-18). He admitted he was the driver of the Nissan that pulled into "a little podunk gas station" to find gas (T65, 11:3-18). He remembered seeing a police officer and that the officer approached him and asked questions (T65, 15:24-16:1). He remembers the officer told him, "he had to search the car" and that, "they needed to pull around to the side of the station" (T65, 16:12-16). He remembers that the search occurred on the side of the gas station (T65, 16:19-23). He does not remember saying anything to the officer while at the pumps, and does not remember ever talking to the officer (T65, 17:18-21). He remembers the search (T65, 18:4-6), but does not remember if the officer was rude or nice or what the officer said (T65, 18:16-21).

**A. Standing.**

The government contends that defendant does not have standing to contest the search of the vehicle. Although the Nissan vehicle was leased to codefendant Wright's father, the record shows that Baird was authorized on the lease as a driver and was a passenger in the vehicle. I find that defendant Baird is entitled to "challenge the stop and detention and argue that the evidence should be suppressed as fruits of illegal activity." *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998); *accord United States v. Ameling*, 328 F.3d 443, 447 n.3 (8th Cir.), *cert. denied*, 540 U.S. 961 (2003).

---

[5] Wright's testimony on this date is contained in Transcript of Proceedings (#65).

**B. Search of the Nissan.**

Police may conduct a search of someone's vehicle, home or person even without a warrant or probable cause if that person voluntarily consents to the search. *See, e.g., United States v. Bradley*, 234 F.3d 363, 366 (8th Cir. 2000); *United States v. Deanda*, 73 F.3d 825 (8th Cir. 1996). To determine whether such a consent was voluntary, the court must examine the totality of the circumstances, including the characteristics of the accused and the nature of the encounter. *See Bradley*, 234 F.3d at 366. The government has the burden of proving consent was voluntary. *United States v. Parris*, 17 F.3d 227, 229 (8th Cir.), *cert. denied*, 511 U.S. 1077 (1994); *United States v. Heath*, 58 F.3d 1271, 1275 (8th Cir.), *cert. denied*, 516 U.S. 892 (1995). "The prosecution need not prove that the individual was fully aware of his or her rights under the Fourth Amendment in order to establish a voluntary consent." *Heath*, 58 F.3d at 1275 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973)). "Consent is voluntary 'if it was the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or coercion, express or implied.'" *United States v. Fleck*, 413 F.3d 883 (8th Cir. 2005) (quoting *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990)).

In this case, the government offers the testimony of Trooper Warnke in order to meet its burden of proving that consent to search was given. Warnke testified that he asked for and received permission to search. Trooper Warnke's testimony was contradicted by the defendant, who testified that consent was never requested or given. Also of interest is the testimony of codefendant Michael Wright, who stated he did not remember much of the conversation between the defendants and Trooper Warnke. Wright

testified he could not recall whether Warnke asked for consent to search or whether Wright gave consent. Finally, there is Warnke's affidavit (Ex. 101), where Warnke stated, under oath, that he "asked if they had anything illegal in the vehicle and asked them to park the vehicle so he could search it. Wright complied and the vehicle was searched by Warnke." Significantly, Warnke's affidavit, prepared on the day of the search, does not mention that any consent was requested or given.

In attempting to reconstruct the events surrounding the issue of consent, based on the evidence, I find that the testimony of the codefendant, Michael Wright, to be less than credible. Additionally, even if found credible, the sum of his testimony is that he does not remember much of the conversation with Trooper Warnke. This, then, leaves the testimony of Trooper Warnke, his affidavit of probable cause, and Baird's testimony for the court's consideration.

The affidavit of Trooper Warnke, while not in direct contradiction to his in-court testimony, is troubling. Perhaps Trooper Warnke omitted any mention of consent from his affidavit because consent to search is not an issue that a judge would necessarily consider in deciding whether there was probable cause for a warrantless arrest. On the other hand, it is very unusual for an experienced trooper who claims to have received consent to search a vehicle to omit all information about the consent from his written account memorializing the incident. The information memorialized in Trooper Warnke's sworn affidavit is merely that he "asked them to park the vehicle so he could search it." There is no reference to any consent, and it is this part of the affidavit which, when considered

with Baird's testimony, leads me to conclude that I am unable to determine exactly what was said prior to the search.[6]

"The government is required to show voluntary consent by a preponderance of the evidence." *United States v. Lakoskey*, 462 F.3d 965, 973 (8th Cir. 2006). Considered in its totality, the information supplied by Trooper Warnke is ambiguous as to whether consent was ever requested or given. Based on this record, I find that the government has not met its burden of showing voluntary consent by a preponderance of the evidence. Consequently, I find that Baird was illegally detained and his Fourth Amendment rights were violated by a warrantless, nonconsensual search of the Nissan. Since statements and evidence resulting from an illegal detention are not admissible, *United States v. Ramos*, 42 F.3d 1160, 1164 (8th Cir. 1994), *cert. denied*, 514 U.S. 1134 (1995) (citing *Wong Sun v. United States,* 371 U.S. 471 (1963)), I recommend that the Motion to Suppress be granted.

**C.** *Miranda.*

If the district court does not adopt the recommendation that all physical evidence and statements be suppressed based on the government's failure to meet its burden of proof on the issue of consent, it will be necessary to address the issue of Baird's statements.

The protections of *Miranda v. Arizona*, 384 U.S. 436 (1966), "are triggered only when a defendant is both in custody and being interrogated. *United States v. Lawrence,*

---

[6] I note that I have viewed the DVD (Ex. 103) and find it of no value as to the issue of consent as it contains events prior to and following the search, but does not contain the conversation about the search.

952 F.2d 1034, 1036 (8th Cir.), *cert. denied*, 503 U.S. 1011 (1992).  'Interrogation' is 'express questioning,' or words or actions 'that the police should know are reasonably likely to elicit an incriminating response....'  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Lawrence,* 952 F.2d at 1036...."  *United States v. Hatten*, 68 F.3d 257, 261-62 (8th Cir. 1995), *cert. denied,* 516 U.S. 1150 (1996) (parallel citations omitted); *see also United States v. Boyd*, 180 F.3d 967, 976-77 (8th Cir. 1999); *United States v. Head*, 407 F.3d 925, 929 (8th Cir. 2005).

"A *Miranda* warning must precede any custodial interrogation.  A custodial interrogation involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *United States v. Chamberlain*, 163 F.3d 499, 502 (8th Cir. 1999) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)).

The government bears the burden of proving by a preponderance of the evidence that, under the particular facts and circumstances of this case, the defendant's waiver of his *Miranda* rights was "an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a known right or privilege."  *United States v. Black Bear*, 422 F.3d 658, 663 (8th Cir. 2005).  "To determine whether a waiver or a confession was voluntary, a court looks at the totality of the circumstances and must determine whether the individual's will was overborne."  *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002).  The court must examine both "'the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess.'"  *Id.* (quoting *United States v. McClinton*, 982 F.2d 278, 282 (8th Cir. 1992)).

> To state the obvious, "interrogation of a suspect will involve some pressure because its purpose is to elicit a confession." ... [T]he fact that the tactics produced the intended result ... does not make [a] confession involuntary." ... In other words, "there is nothing inherently wrong with efforts to create a favorable climate for confession." ... "[Q]uestioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne.'" ... Nor will a promise of leniency, an "expressed disbelief in the statements of a suspect ..., or lie[s] to the accused about the evidence against him" necessarily render a confession involuntary.... Rather, the coercive conduct must be "such that the defendant's will was overborne and his capacity for self-determination critically impaired."

*United States v. Santos-Garcia*, 313 F.3d at 1079 (citations omitted).

Regarding Baird's statement to Sergeant Kurt Von Minden that there was a gun in the back of the Nissan, I find that this statement is not protected by *Miranda* as it was not the result of "interrogation" or the "words or actions" that law enforcement should know were reasonably likely to elicit an incriminating response. The record shows that this statement was volunteered.

Regarding Baird's statements at the Seward Police Department to Agent Ron E. Meadows, I find that prior to making any statements, Baird was advised of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and that there is no evidence he did not understand the advice of rights. Baird was in custody and was questioned by Meadows after being advised of his right, signing the advisory form, and agreeing to be interviewed. The record contains no evidence of threat, promise, or coercion. I find that before he gave his statement to Agent Meadows, Baird was advised of his *Miranda* rights, and he freely, voluntarily, and intelligently waived those rights, and gave a statement.

## RECOMMENDATION

For these reasons,

**IT IS RECOMMENDED** that defendant's MOTION TO SUPPRESS (#31) be granted.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.

**DATED December 21, 2006.**

        **BY THE COURT:**

        **s/ F.A. Gossett**
        **United States Magistrate Judge**